In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 01-1552 & 01-2760

YU JUNG PARK,

*Plaintiff-Appellant,*

v.

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 372—**Joan Humphrey Lefkow**, *Judge.*

ARGUED JANUARY 14, 2002—DECIDED JULY 22, 2002

Before POSNER, RIPPLE and DIANE P. WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In February 1999, the Chicago Police Department ("CPD") terminated Yu Jung Park on the ground that she had abused her use of leave time from work. Soon after this decision, Ms. Park filed this action against the City of Chicago ("the City"). She alleged that the CPD terminated her because of her race and national origin in violation of Title VII and 42 U.S.C. § 1981. These claims proceeded to trial, and a jury returned a verdict for the City. Ms. Park now appeals and alleges that the district court made several erroneous rulings that affected the outcome of the trial. For the reasons set forth in the following opinion, we affirm.

**I**

**BACKGROUND**

**A. Facts**

In May 1998, Ms. Park, an Asian-American of Korean ancestry, graduated from the CPD's police academy. Although the CPD still considered Ms. Park a probationary police officer ("PPO"), it assigned her for field training in the Thirteenth District, a precinct on Chicago's west side. During her probationary period, Ms. Park generally received solid evaluations from her primary field training officer ("FTO"), Officer Miguel Reyes. A second officer who served as Ms. Park's temporary FTO for a two-week period provided a harsher critique of Ms. Park's performance. In particular, the temporary FTO, Officer Lily St. Pierre, noted deficiencies in Ms. Park's attitude and attention to detail.

Sergeant Bryon Uding of the Thirteenth District, at the direction of his watch commander, reviewed the negative evaluation with Ms. Park. The conversation became heated, and Ms. Park expressed in colorful terms her displeasure with Officer St. Pierre's training methodology. The sergeant's report of this incident prompted the commander of the police academy not only to counsel Ms. Park concerning her attitude but also to extend her probationary period. Throughout the autumn and winter months of 1998, Ms. Park spent several days on the medical roll, nearly depleting her leave time with the CPD.

In early 1999, citing an alleged abuse of leave time, the CPD convened a Field Evaluation Review Board ("FERB") to assess Ms. Park's performance. During the meeting, the FERB considered various materials, including the FTOs' evaluations of Ms. Park's performance, Sergeant Uding's report concerning his encounter with Ms. Park and informa-

tion concerning Ms. Park's use of the medical roll. After considering these materials, the FERB unanimously recommended Ms. Park's termination; she learned of this action several days later.

In January 2000, almost one year after her termination, Ms. Park requested to review her CPD personnel file pursuant to the Illinois Personnel Record Review Act ("the Illinois Record Act" or "the Act"), 820 ILCS 40/1 to 40/12. In general terms, this state statutory scheme permits an employee to inspect personnel documents "used in determining [his] qualifications for employment, . . . discharge or disciplinary action." 820 ILCS 40/2. If an employer fails to abide by the Act, an aggrieved employee may seek not only compliance but also sanctions against the employer through administrative, and in some cases, judicial channels. *See* 820 ILCS 40/2, 40/12. In particular, if an employer withholds personnel records from the employee, the Illinois Record Act prohibits the employer from using these documents against the employee in a judicial proceeding unless a judge determines that: (1) the failure to turn over the documents was unintentional; and (2) the employee has had a reasonable time to review the documents prior to trial. *See* 820 ILCS 40/4. In this case, the City responded to Ms. Park's request and turned over what it represented to be the entire contents of her personnel file.

## B. District Court Proceedings

After inspecting her personnel file, Ms. Park filed this action against the City. She alleged that the CPD terminated her because of her race and national origin in violation of Title VII and 42 U.S.C. § 1981. The district court promptly scheduled a trial date and established a stringent discovery schedule. The parties, however, quickly became em-

broiled in discovery disputes. In particular, on July 24, 2000, Ms. Park, through counsel, filed the first of several motions to compel the production of documents retained by the City. The City contested the motion on the ground that it had disclosed several thousand pages of documents in compliance with Ms. Park's discovery requests. Dissatisfied with this response, the district court entered judgment against the City on liability, but stayed the order to provide the parties with an opportunity to resolve the dispute. Although the City produced additional documents over the next two weeks, some of Ms. Park's discovery requests remained unfulfilled.

On August 10, the parties appeared before the district court. Although acknowledging that the City had disclosed thousands of records, Ms. Park's counsel emphasized that she had not received "performance evaluation[s] or disciplinary histor[ies], attendance records, the core documents . . . need[ed] to prove [her] case in this matter." Tr.26-2 at 14. In response, the City stressed that it had responded to Ms. Park's broad discovery requests in "a very short period of time with very tight manpower" constraints. *Id.* at 6. Moreover, the City noted that it would continue its efforts to comply with Ms. Park's discovery requests. The district court, however, lifted the stay on its order and entered a judgment on liability in favor of Ms. Park. Several days later, on its own motion, the district court reversed course and entered the following order: "The court . . . vacates its entry of judgment on liability for plaintiff as premature since discovery does not close until 9/5/00."[1] R.22.

Over the next several months, the district court continued to work with the parties to resolve the remaining discovery

---

[1] Soon after this ruling, a different judge assumed responsibility over this case and presided over the remainder of the litigation.

disputes. Although granting Ms. Park's third motion to compel production of a small class of additional documents, the district court expressed concern that "this case is being over discovered." Tr.101-2 at 7. In December 2000, Ms. Park filed an additional motion to compel, seeking, among other things, the performance reviews of several additional police officers. In addition, Ms. Park's counsel expressed frustration with the City's failure to produce other documents and noted that she was "getting the same response from the defendant regarding these issues, if they don't produce the documents, it has been destroyed. . . . None of these documents should be destroyed." Tr.101-5 at 4. Once again, the City reiterated that it had attempted vigorously to comply with the document requests and had produced, "substantially all that [it was] required to produce." Tr.101-5 at 2. The City indicated that many of the unproduced documents had been destroyed or could not be located. After considering the parties' positions, the district court again granted the motion to compel, but declined implicitly to impose sanctions on the City. The district court also instructed the City to provide Ms. Park with a formal response detailing the precise documents that had been lost or destroyed.

Shortly before trial, citing the missing and destroyed documents, Ms. Park requested that the district court provide the jury with an adverse inference instruction. In particular, Ms. Park submitted that a jury could infer from the City's failure to produce these records that the documents contained information adverse to its case. The district court, however, declined to give the instruction.

Prior to trial, Ms. Park also filed a motion in limine seeking the exclusion of certain documents ("the contested documents") from trial pursuant to the sanction provision of the Illinois Record Act. In July 2000, the City disclosed

numerous documents relating to Ms. Park's termination
from the CPD. However, some of these records—the con-
tested documents—had been absent from Ms. Park's per-
sonnel file when she inspected it in January 2000. According
to Ms. Park, the City had withheld intentionally these doc-
uments in January 2000 in violation of the Illinois Record
Act. Ms. Park contended that the district court was obli-
gated to exclude the documents in accordance with the
sanction provision of the Illinois statute.

In addition, one week before trial, Ms. Park sought leave
to amend her complaint to include a claim that the City had
violated the Act. Again, she requested that the district court
enforce the sanction provision of the statute and exclude
the contested documents from trial.

The district court denied both motions. In particular, the
court rejected Ms. Park's contention that the exclusionary
provision of the state statute controlled in this federal
question litigation. Moreover, the court noted that, even
if the Act controlled, Ms. Park had failed to establish that
the City intentionally withheld the contested documents—
the necessary showing needed to trigger the sanction
provision. Similarly, the court denied the motion to amend
on the grounds that such an amendment would be futile
and untimely. In particular, Ms. Park had failed to follow
the administrative procedures necessary before a personal
suit could be instituted under the Act, thereby rendering
her amendment futile. In the alternative, the district court
noted that Ms. Park knew of the potential violation of the
Act in July 2000, but had waited until the eve of trial to
amend her complaint.

After a trial on the merits of Ms. Park's claims, a jury
found the City not liable for violations of Title VII and
§ 1981. The City promptly moved to recover its costs for the
litigation. Although Ms. Park vigorously contested the

imposition of costs, the district court granted the City's motion.

## II

## DISCUSSION

### A. Illinois Record Act

#### 1.

We turn first to Ms. Park's contention that the district court violated the mandates of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), when it denied her motion in limine and thus declined to exclude the contested documents from trial pursuant to a sanction provision of the Illinois Record Act. In essence, Ms. Park submits that this state evidentiary statute should govern not only discovery but also issues of admissibility in this federal question litigation.

We cannot accept this proposition. The Federal Rules of Evidence, not provisions of state law, govern the admissibility of evidence in federal court. *See* Fed. R. Evid. §§ 101, 402. It is well-established that, generally, the rule in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), requires federal courts to apply state substantive law "except in matters governed by the Federal Constitution or by acts of Congress." *Erie*, 304 U.S. at 78. Matters concerning the admissibility of evidence and matters of practice and procedure are governed by federal law, as long as those rules are procedural in character.[2] *See Hanna v. Plumer*, 380 U.S. 460, 469-74 (1965).

---

[2] Even if the exclusion of these documents were considered a matter of substance under the *Erie* doctrine, that doctrine, by its own terms, would not apply in this case. The doctrine simply

(continued...)

Given these principles, the district court correctly rejected Ms. Park's motion in limine seeking exclusion of the documents pursuant to the Illinois Record Act. The exclusion of documents as a sanction for nondisclosure is a subject for regulation by the federal court as a matter of procedure. Moreover, Ms. Park's principal cause of action stems from Title VII, a federal statute that prohibits certain forms of discrimination in the workplace. Indeed, her claims arise exclusively under federal law. As we noted, in such a situation, *Erie* and its progeny do not bind the federal courts. As such, the Illinois Record Act, a state evidentiary statute,[3] may not displace the Federal Rules of Evidence and the guidelines they establish concerning the admissibility of these documents in Ms. Park's Title VII and § 1981 actions. Accordingly, the district court was not obligated to follow the sanction provision of the Illinois Record Act and properly rejected Ms. Park's motion in limine.

---

[2] (...continued)
does not apply and state substantive law does not control when a plaintiff's claim arises under federal statutory or constitutional law. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 n.3 (7th Cir. 1997). Simply put, "*Erie* and its progeny do not bind federal courts [when] rights are asserted under an act of Congress." *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1271 (7th Cir. 1976).

[3] Although the parties debate whether the Illinois Record Act constitutes a substantive or procedural rule, the distinction is irrelevant in this case. Ms. Park's claims derive from federal statutes. As discussed in footnote 2 and the accompanying text, under these circumstances, the federal courts have no obligation to follow in federal question litigation this evidentiary sanction provision regardless of its procedural or substantive nature.

**2.**

In addition, Ms. Park also contends that the district court erred when it denied her leave to amend her complaint to include a claim against the City for a violation of the Illinois Record Act. The district court denied the motion, concluding not only that the amendment was futile but also untimely. We review this determination for an abuse of discretion. *See Feldman v. Am. Memorial Life Ins. Co.,* 196 F.3d 783, 793 (7th Cir. 1999).

Although Federal Rule of Civil Procedure 15(a) provides that, in most instances, a party must seek leave of court to amend his complaint, it instructs the courts to give freely such leave "when justice so requires." Fed. R. Civ. Proc. 15(a). The terms of the rule, however, do not mandate that leave be granted in every case. In particular, a district court may deny a plaintiff leave to amend his complaint if "there is undue delay, bad faith[,] or dilatory motive . . . [, or] undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Ferguson v. Roberts,* 11 F.3d 696, 706 (7th Cir. 1993). In this case, the district court determined that amendment would be futile[4] because Ms. Park had not exhausted the available administrative remedies and because the request, filed on the eve of trial, was untimely.

We find it unnecessary to address the issue of non-exhaustion of administrative remedies because, even if those remedies had been exhausted, Ms. Park would not be entitled to the relief she seeks. Although the Illinois Record Act permits a victorious plaintiff to recover money

---

[4] *See Vargas-Harrison v. Racine Unified Sch. Dist.,* 272 F.3d 964, 974-75 (7th Cir. 2001); *Bower v. Jones,* 978 F.2d 1004, 1008 (7th Cir. 1992).

damages for a violation of its terms, Ms. Park, through her motion to amend, sought only to exclude the contested documents. Indeed, when asked during oral argument what remedies were sought for a violation of the Act, counsel for Ms. Park confirmed that his client only sought the exclusion of the documents from trial. In essence, the motion to amend served merely as a permutation of her attempt to use this state statute to exclude otherwise admissible and relevant documents from this federal question litigation. As we have already concluded, the sanction provision of the Illinois Record Act cannot dictate the admissibility of evidence in this proceeding.

Moreover, we cannot say that the district court abused its discretion in concluding that the proposed amendment was untimely because Ms. Park unduly delayed in filing the motion to amend her complaint. Delay, standing alone, may prove an insufficient ground to warrant denial of leave to amend the complaint; rather, "the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." *See Doherty v. Davy Songer, Inc.*, 195 F.3d 919, 927 (7th Cir. 1999). However, even if the district court fails to articulate a finding of prejudice, we may affirm provided that "the prejudice that would result from such amendment was apparent." *Feldman v. Am. Memorial Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773-74 (7th Cir. 1995). Here, the district court acted well within its discretion in concluding that Ms. Park's six-month wait constituted undue delay. As the district court noted, Ms. Park knew or should have known of the City's possible violation of the Act in July 2000—the month in which the City disclosed the contested documents during discovery. At that time, Ms. Park could have alleged a violation of the Act and sought money

damages as well as a preemptive ruling on the admissibility of the contested documents. Instead, Ms. Park delayed bringing this claim until the eve of trial, well over six months after she could have filed the claim. Moreover, it is apparent that prejudice would have resulted from the late motion. In particular, the City would have been forced to prepare a defense to this claim in little under a week's time. Such a situation, no doubt, also would have burdened the district court. It would have been forced to conduct a hasty hearing on the admissibility of this evidence days before the trial. We cannot conclude, on this record, that the district court abused its discretion in denying the motion to amend the complaint.

## B. Sanctions

In the most conclusory manner, Ms. Park also contends that the district court erred when it failed to impose sanctions on the City for purported abuses of the discovery process. In particular, Ms. Park challenges the district court's decision to vacate the judgment on liability against the City.

A trial court has broad discretion concerning the imposition of discovery sanctions. *See Scaggs v. Consol. Rail Corp.*, 6 F.3d 1290, 1295 (7th Cir. 1993). Indeed, it is in "the best position to determine if a party has complied with its discovery orders." *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 670 (7th Cir. 1996). Accordingly, we review the district court's decision to refrain from imposing discovery sanctions for an abuse of discretion. *See Matei v. Cessna Aircraft Co.*, 35 F.3d 1142, 1147 (7th Cir. 1994).

We cannot accept Ms. Park's contention that the district court abused its discretion in vacating the entry of judg-

ment on liability against the City. When the City seemingly failed to comply with a portion of Ms. Park's discovery request, the district court promptly levied a severe sanction against the offending party—the entry of judgment in favor of Ms. Park. Discovery, however, had not closed at the time the district court took this action. Upon recognizing this fact, the district court reversed course, vacated the judgment and provided the City with an opportunity to comply with the discovery request. This decision certainly does not constitute an abuse of discretion.

Although the discovery disputes continued well after the district court's decision to vacate the entry of judgment, we simply cannot conclude, on this record, that it abused its discretion in declining to impose additional sanctions. Ms. Park undoubtedly filed several motions seeking to compel the City to produce certain documents. The record, however, also contains evidence that the City attempted to comply not only with the original discovery requests but also with the district court's orders compelling production of documents. Moreover, the City responded to numerous discovery requests without incident; volumes of documents changed hands without intervention from the district court. Although the district court did not address expressly the requests for sanctions contained in Ms. Park's final motions to compel, its handling of these motions during numerous hearings constituted an implicit response that sanctions were not warranted. The district court fully considered the parties' arguments during these hearings and resolved the discovery disputes. Accordingly, we conclude that the district court did not abuse its discretion in declining to impose sanctions on the City.

## C.  Adverse Inference Instruction

We next address Ms. Park's contention that the district court erred when it declined to give an adverse inference instruction to the jury.[5] In particular, Ms. Park alleges that the City, in bad faith, intentionally destroyed or lost portions of the following records: (1) management logs detailing disciplinary actions in the Thirteenth District; (2) FERB files for retained PPOs; (3) evaluation forms of PPOs comparable to Ms. Park; and (4) time and attendance sheets. Moreover, according to Ms. Park, the City's destruction of some of these documents violated an EEOC record retention regulation, 29 C.F.R. § 1602.14,[6] further war-

---

[5] Ms. Park requested, and the district court declined to give, the following instruction: "If a party fails to produce evidence, which is under its control and reasonably available to it and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not." Appellant's Appendix at 4.

[6] The regulation states in pertinent part:

Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the

(continued...)

ranting the adverse inference instruction. We review a district court's determinations concerning jury instructions for an abuse of discretion. *See Spiller v. Brady*, 169 F.3d 1064, 1066 (7th Cir. 1999).

An employer's destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case. *See Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001). Rather, to draw such an inference, the employer must have destroyed the documents in bad faith. *See id.*; *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982). Thus, "[t]he crucial element is not that evidence was destroyed but rather the reason for the destruction." *S.C. Johnson & Son, Inc.*, 695 F.2d at 258. Moreover, we have stated that a violation of a record retention regulation "creates a presumption that the missing record[s] contained evidence adverse to the violator." *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998) (cautioning, however, that the presumption does not attach to inadvertent failures to comply with a regulation). At the same time, though, we have intimated that, absent bad faith, a violation of 29 C.F.R. § 1602.14, the EEOC record retention regulation, would not automatically trigger an adverse inference. *See Rummery*, 250 F.3d at 558.

Ms. Park first notes that, during discovery, the City produced only two management logs from one of the time

---

[6] (...continued)
   Attorney General, against an employer under title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.

29 C.F.R. § 1602.14.

periods relevant to this litigation, 1997 to 1999. Before the district court, and again on appeal, the City indicates that, in good faith, it destroyed all such records relating to events before April 20, 2000, pursuant to a routine record expungement policy. The City cannot articulate the precise dates on which these management logs were destroyed; however, under department regulations, the management logs apparently are retained only for three twenty-eight day periods before expungement. If the CPD followed this policy, the vast majority of these records would have been destroyed well before September 1999—the month in which Ms. Park filed her EEOC charge and thus triggered the City's obligation to preserve documents relevant to her discrimination claims.[7] Ms. Park, skeptical of this explana-

---

[7] We cannot accept Ms. Park's attempt to tie her discrimination claim to that of a fellow PPO, Officer Cezary Glebocki. Officer Glebocki filed a claim of discrimination against the City in June 1998 and thus triggered at that time the City's duty under the EEOC regulation to preserve documents relevant to his claim. During the pendency of Officer Glebocki's claim, but before Ms. Park filed her charge with the EEOC, the City destroyed numerous documents pursuant to a record retention policy.

Ms. Park contends that the destroyed documents were relevant to both her and Glebocki's claims of discrimination and hence violated the EEOC record retention policy. Consequently, she continues, this destruction warrants an adverse inference against the City in her case.

Although both officers filed discrimination claims against the City, the suits dealt with different issues. In particular, Officer Glebocki contended that a sergeant in the Thirteenth District filed frivolous complaint registers against him because of his Polish nationality. Whatever may be the importance of this officer's allegations in his own case, they are not relevant to Ms. Park's. At
(continued...)

tion, questions why the City managed to preserve two logs, both of which documented disciplinary actions taken against her. However, as the City notes, it retained the records relating to Ms. Park because the CPD had extended her probationary period; in essence, the City sought to preserve the record against Ms. Park should further disciplinary problems have occurred during the course of her employment. We cannot say that, based on this record, the district court abused its discretion in declining to give an adverse inference instruction to the jury concerning the management files.

Next, Ms. Park asserts that the City selectively destroyed FERB files of other PPOs. In particular, Ms. Park notes that the City retained only for a two-year period the FERB files of two non-Korean PPOs investigated, but never terminated, by the committee. In contrast, the City kept indefinitely the FERB file of a PPO named Flynn whom the committee decided to terminate. The issue, however, is not merely whether documents where destroyed or even selectively destroyed. Rather, the crucial inquiry concerns the reason underlying the destruction of the documents. As the City notes, it retained Flynn's file precisely because it terminated him; the document was retained for liability purposes. Moreover, the other documents were destroyed before Ms. Park filed her charge of discrimination in September 1999. Ms. Park offers little in response other than her own speculation that the records of the retained PPOs may have indicated that the CPD was more lenient

---

[7] (...continued)
the time of the destruction of the records, she had not filed her complaint with the EEOC. Therefore, it cannot be inferred that the City destroyed the documents to conceal adverse information relating to Ms. Park's suit.

towards non-Korean, non-Asian-American officers. The district court's decision to reject this proffer as a basis for giving an adverse inference instruction does not constitute an abuse of discretion.

Finally, Ms. Park claims that the City intentionally misplaced and destroyed portions of the last two classes of documents—PPO performance evaluations and time sheets for officers working in the Thirteenth District. Her arguments, however, are unavailing. Foremost, although Ms. Park correctly notes that the City destroyed PPO evaluation forms for the years 1993 to 1997, she fails to mention that the City expunged these documents in June 1999—before she filed her complaint with the EEOC. It is apparent that the City failed to produce certain documents to Ms. Park including: one of her performance evaluations, a handful of reviews relating to other PPOs and at least 235 time and attendance sheets for officers of the Thirteenth District. However, other than her own speculation, Ms. Park has failed to adduce evidence that the City, in bad faith, declined to produce these records. Indeed, the City represented to the district court that, after a diligent search, it could not locate these records. Simply put, the City lost these documents. Despite these deficiencies in its production of documents, the City did produce evaluations and time sheets that proved adverse to its case. In particular, it gave Ms. Park all but one of her evaluations; most of the reviews contained positive critiques of her performance. Likewise, the City provided Ms. Park with records indicating that the CPD did not terminate an individual who had used more medical days than Ms. Park had. If the City, in fact, was selectively losing documents, seemingly it would have disposed of these records as well. A finding of bad faith is not compelled on these facts. Accordingly, the district court did not abuse its discretion in

declining to give an adverse inference instruction to the jury.

### D. Imposition of Costs

Finally, we address Ms. Park's contention that the district court erred in assessing roughly $8,000 in costs imposed upon her pursuant to Federal Rule of Civil Procedure 54(d). We review the district court's decision to impose costs for an abuse of discretion. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). However, we note that, under Rule 54(d), "discretion is narrowly confined because of the strong presumption created by [this rule] that the prevailing party will recover costs." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997).

Ms. Park's argument centers on the alleged misconduct in which the City engaged during discovery. Specifically, she contends that the City's activities exacerbated the assessment against her. Indeed, she submits that the City's actions required the district court to refuse the imposition of costs. Ms. Park is correct that misconduct on the part of a prevailing party suffices to deny costs. *See Contreras*, 119 F.3d at 1295. However, this argument is, in essence, the same argument as the one we already have considered and rejected in holding that the district court acted within its discretion in refusing to impose sanctions upon the City. We shall not revisit that determination. Moreover, in her brief to this court, Ms. Park failed to note that the district court did reduce the amount of copying costs it assessed on her. In particular, the district court "infer[red] that more timely production of documents during the discovery phase would have made prior review of the documents more practicable," and thus reduced the need for wholesale copying. R.96 at 5. We find no abuse of discretion in the

manner in which the district court accounted for the discovery disputes in assessing costs on Ms. Park.[8]

## Conclusion

We conclude that Ms. Park has failed to raise any claims that warrant further proceedings in this case. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[8] In her reply brief, Ms. Park submits that she is unable to pay the assessment thereby justifying the denial of costs. Ms. Park, however, failed to raise this contention in her opening brief. As such, the argument has been waived. *See Bobo v. Kolb*, 969 F.2d 391, 400 (7th Cir. 1992).