NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 3, 2007
Decided January 26, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-2736

| | |
|---|---|
| BRIAN MALONE, also known as JAWANZA MALONE, DOUGLAS RHODES, also known as FUNDISHI MPATANISHI, and JHATAYN TRAVIS, also known as HASANI TRAVIS, <br>     *Plaintiffs-Appellants,* <br><br>         *v.* <br><br> AMERICAN FRIENDS SERVICE COMMITTEE, <br>     *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 04 C 8186 <br><br> Matthew F. Kennelly, *Judge.* |

## O R D E R

This appeal arises out of a decision by the American Friends Service Committee to terminate the employment of Plaintiffs Brian Malone, Douglas Rhodes, and Jhatayn Travis after initiating an investigation into allegations of misconduct against them. Challenging the termination, Plaintiffs, all African Americans, filed suit against their employer. They now appeal the district court's dismissal of their claims on summary judgment and the denial of their motion for leave to file an amended complaint. We affirm, finding first that Plaintiffs are unable to cite to any direct or circumstantial evidence of racial discrimination or establish a prima facie case of discrimination. We

also conclude that there is no evidence of a conspiracy to interfere with Plaintiffs' civil rights. Finally, we determine that the district court did not abuse its discretion in denying Plaintiffs leave to file an amended complaint, as the proposed changes either were unduly delayed and posed a risk of undue prejudice or were futile.

## I. BACKGROUND

Plaintiffs were employees of the African-American Community Empowerment Program ("AACEP"), an entity established by Defendant American Friends Service Committee ("AFSC") in 1990 to serve the Chicago area's African-American community through youth programing and cultural activities. During the period relevant to this litigation, AACEP's staff consisted solely of the three plaintiffs.

In September 2003, AFSC learned of the involvement of the organization Simba Na Malaika Wachanga ("Wachanga") in AACEP. AACEP staff allegedly had to be members of Wachanga to retain their positions in AACEP. During this time, AFSC executives also received an e-mail, which identified Rhodes, Travis, and another individual as the leaders of Wachanga and noted that Wachanga also operated under the name "African-American Community Empowerment Program ." The e-mail, which contained a host of allegations, accused the leaders of Wachanga of abusing their positions of power to create an atmosphere of domination and control among Wachanga's members. Around October 6, 2003, AFSC suspended the operations of AACEP and placed Plaintiffs on paid leave pending an investigation into the allegations. After an unsuccessful attempt to retain one investigator, in December 2003, AFSC hired Kroll International, an outside company, to conduct the investigation.

In April 2004, after interviewing numerous witnesses, Kroll completed its investigation and produced a detailed report for AFSC concerning AACEP.[1] Among the report's findings were that AACEP was the public face of Wachanga and that AACEP meetings were held as Wachanga meetings when AFSC representatives were not present. In addition, witnesses reported that Rhodes was aware of another Wachanga leader's sexual advances and abuse toward women involved in Wachanga but took no action to stop the behavior. Witnesses also described an atmosphere of control, domination, and verbal and emotional abusiveness caused by Rhodes and Travis. After Kroll issued the report, AFSC's General Secretary, Mary Ellen McNish,

---

[1] After oral argument, Plaintiffs filed a motion for "instructions and relief," in which they suggest that the Kroll report is not part of the record on appeal. We deny Plaintiffs' motion (which we construe as a motion to strike) because we do not rely on the report itself in this disposition. Our references to the report's conclusions are taken from the affidavit of AFSC's General Secretary, Mary Ellen McNish, in support of AFSC's motion for summary judgment, which was included in the appellate record. Although Plaintiffs dispute the significance of the report's conclusions cited in McNish's affidavit, they do not contest that these were, in fact, Kroll's conclusions.

decided to discontinue AACEP, which precipitated the termination of Plaintiffs' employment.

In December 2004, Plaintiffs filed suit alleging that AFSC terminated their employment because of their race in violation of 42 U.S.C. § 1981. Plaintiffs' complaint also cites to 42 U.S.C. § 1986, which creates a cause of action against a person that neglects or refuses to stop a conspiracy to violate the civil rights of a member of a protected class. After the parties engaged in discovery, AFSC moved for summary judgment. Plaintiffs responded to AFSC's motion and requested leave to amend their complaint to add Title VII and breach of contract claims. Plaintiffs also sought to allege that AFSC tortiously altered evidence (an employee handbook). The district court granted summary judgment in favor of AFSC and denied Plaintiffs' request to amend their complaint. Plaintiffs appeal.

## II. ANALYSIS

### A. Plaintiffs cannot support their § 1981 race discrimination claim under either the direct or indirect method of proof.

We review de novo the district court's grant of summary judgment. *Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 793 (7th Cir. 2006). To establish a claim of race discrimination, Plaintiffs may proceed under either the direct or indirect method of proof. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004). Because Plaintiffs do not specify under which method they have chosen to proceed, this order discusses the sufficiency of Plaintiffs' claim under both.

Using the direct method, a plaintiff can show that her employer's termination decision was motivated by a discriminatory purpose by presenting direct evidence of discrimination, such as an outright admission from the employer, or circumstantial evidence that is directly linked to a discriminatory reason for the termination decision. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006); *Dandy*, 388 F.3d at 272. Lacking an outright admission of discrimination, Plaintiffs here attack the conclusions of the Kroll report, claiming that it cites no specific allegations of improper conduct by Malone or Travis, and that its findings against Rhodes are insufficient. Although the report does not attribute the cited acts of misconduct directly to Malone, Plaintiffs do not dispute that Malone was involved in Wachanga. Kroll's investigation revealed that Wachanga was improperly using AACEP's resources for its own purposes and conducting AACEP meetings as Wachanga meetings without AFSC's knowledge. As one of three employees of a program that was the subject of Kroll's investigation, it is immaterial that the report did not independently implicate Malone. Concerning the findings against Travis, it is simply untrue that no allegations of misconduct were made against her. The report identified both Travis and Rhodes as creating an atmosphere of control, domination, and abusiveness in their leadership of Wachanga, which had permeated AACEP. In addition, Rhodes himself was identified as having

been complicit in a colleague's alleged acts of sexual abuse. Because Plaintiffs have pointed to nothing about the investigation from which we could infer a discriminatory motive behind AFSC's decision to terminate their employment, Plaintiffs are unable to establish their claim of race discrimination under the direct method.

Plaintiffs fare no better under the indirect burden-shifting method of proof, which requires a plaintiff to satisfy the following elements of a prima facie case of discrimination: (1) that she is a member of a protected class; (2) that she was meeting the employer's legitimate business expectations; (3) that she suffered an adverse action; and (4) that she was treated less favorably than a similarly situated individual outside of the protected class. *See Paul*, 465 F.3d at 794. If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant employer to offer a legitimate, non-discriminatory reason for the termination. *Id.* If the defendant makes this showing, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *Id.*

To their detriment, Plaintiffs do not argue a prima facie case of discrimination; instead, they only claim that AFSC's proffered reason for terminating Plaintiffs is pretextual. But Plaintiffs' argument is premature because they cannot make out the second and fourth prongs of a prima facie case of discrimination. Plaintiffs make much of AACEP's past achievements and a positive evaluation given to Rhodes by AFSC's regional director in June 2003. However, our inquiry into the second prong, whether Plaintiffs were meeting AFSC's legitimate business expectations, centers on Plaintiffs' performance in April 2004, the time of their termination. *See Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 676 (7th Cir. 2006). Any previous accolades Plaintiffs received carry little weight in establishing that they were meeting AFSC's legitimate business expectations when they were terminated. That Plaintiffs were not meeting these expectations is evidenced by the investigation's findings that Plaintiffs had permitted one of AFSC's programs to be co-opted by another organization.

Turning to Plaintiffs' inability to satisfy the fourth prong, as the district court found, they "have provided no evidence to suggest that there where [sic] non-African-American employees who were not fired even though they were using their AFSC positions to recruit members for other organizations." *See Malone v. Am. Friends Serv. Comm.*, No. 04 C 8186, 2006 WL 1308612, at *2 (N.D. Ill. May 9, 2006). Plaintiffs make no attempt to argue otherwise on appeal. In their complaint, Plaintiffs allege that AFSC regional director "Micheal McConnell supervised all the activities of the Plaintiffs, and the AACEP staff; he was not fired nor [sic] disciplined. McConnell was white." Compl. ¶ 28. However, Plaintiffs point to no evidence that McConnell was similarly situated to Plaintiffs in performance and qualifications, or that he "had engaged in similar conduct without differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him]." *See Anders*, 463 F.3d at 676 (internal quotations and citations omitted). Because Plaintiffs cannot

satisfy the second and fourth prongs necessary to present a prima facie case of discrimination, their § 1981 claim fails under the indirect method as well.

Even if Plaintiffs could make out a prima facie case of discrimination, they cannot overcome their additional burden of proving that AFSC's reason for the termination is pretextual, or, in other words, a "deliberate falsehood." *See Forrester v. Rauland-Borg Corp.,* 453 F.3d 416, 419 (7th Cir. 2006). Plaintiffs attack the factual conclusions of the Kroll report, yet the issue is not whether AFSC's reason "is correct but whether it is the true ground of the employer's action." *See id.* at 417. Because there is no evidence that AFSC did not actually rely on the report's findings when it terminated Plaintiffs' employment, Plaintiffs' pretext argument would fail.

**B.   There is no evidence that AFSC engaged in a conspiracy to deprive Plaintiffs of their civil rights.**

Plaintiffs also contend that by terminating their employment, AFSC violated 42 U.S.C. § 1986. This provision creates a cause of action against a person that neglects or refuses to stop a conspiracy to violate the civil rights of a member of a protected class. 42 U.S.C. § 1986. An action under § 1986 only lies where a defendant has violated § 1985(3), which prohibits a conspiracy to interfere with one's civil rights. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 642-43 (7th Cir. 2006). To sustain a claim under § 1985(3), four elements are required: (1) a conspiracy; (2) a purpose of depriving any person of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) injury to one's person or property or a deprivation of a right or privilege of a citizen of the United States. *Id.* at 642.

Plaintiffs claim that AFSC hired Kroll "to provide it with a defense for its past torts of suspension and the future torts of discharge." (Appellants' Br. 27.) However, Plaintiffs provide no evidence to support this assertion, and, as we have already determined, there is no basis for Plaintiffs' position that AFSC's termination decision was motivated by an unlawful purpose. Because Plaintiffs cannot show that AFSC violated § 1985(3), their § 1986 claim is foreclosed. *See Keri*, 458 F.3d at 642-43.

**C.   The district court did not abuse its discretion in denying Plaintiffs' request to file an amended complaint.**

Plaintiffs sought to add three new claims to their complaint against AFSC: first, that AFSC violated Title VII by terminating them based on their race; second, that the termination constituted a breach of their employment contract; and third, that AFSC tortiously altered an employee handbook that it produced during discovery. Plaintiffs filed their motion on April 10, 2006, four months after discovery closed on December 15, 2005, and more than nine months after the June 20, 2005 deadline for filing amendments to the pleadings. In considering a request to amend pleadings, the

district court has the discretion to deny the request if "there is undue delay, bad faith, or dilatory motive, or undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Park v. City of Chi.*, 297 F.3d 606, 612 (7th Cir. 2002) (internal quotation and brackets omitted). On appeal, this court reviews the district court's denial of Plaintiffs' motion for leave to amend for an abuse of discretion. *Id.*

The district court noted that Plaintiffs possessed the employee handbook and deposed a witness concerning the alleged problems with the handbook no later than December 2005. Plaintiffs chose to wait until after discovery was closed and briefing of AFSC's summary judgment motion had already begun to add their proposed tort and contract claims; therefore, the district court concluded that grant of the amendment would unfairly prejudice AFSC. On appeal, Plaintiffs provide no explanation for their delay in seeking to amend. Because Plaintiffs' proposed amendment was unduly delayed and posed a risk of undue prejudice to AFSC, we do not find that the district court abused its discretion by denying Plaintiffs' request for leave to amend.

Nor do we find that the district court abused its discretion in denying Plaintiffs' request for leave to file their proposed Title VII claim, which the court also found to be unduly delayed and prejudicial to AFSC. As recognized by the district court, Plaintiffs received their Notice of Right to Sue from the EEOC in September 2004, nine months before the deadline to amend pleadings arrived, giving them ample time to add their Title VII claim. The district court also properly recognized that permitting Plaintiffs to add this claim would be futile because the claim would fail for the same reason Plaintiffs' § 1981 claim had—Plaintiffs were unable to establish a prima facie case of discrimination.

## III. CONCLUSION

The district court's grant of summary judgment in favor of AFSC and its denial of Plaintiffs' motion for leave to file an amended complaint are AFFIRMED.