**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 21, 2019[*]
Decided November 26, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 18-3688

| | |
|---|---|
| RICHARD HOLMAN, <br> *Plaintiff-Appellant,* | Appeal from the United States District <br> Court for the Central District of Illinois. |
| *v.* | No. 14-1439-HAB |
| ANDREW TILDEN and WEXFORD <br> HEALTH SOURCES, INC., <br> *Defendants-Appellees.* | Harold A. Baker, <br> *Judge.* |

**O R D E R**

Richard Holman, an Illinois inmate, sued his prison doctor and Wexford Health Services under 42 U.S.C. § 1983, alleging that he received constitutionally inadequate medical care pursuant to a Wexford policy. The district court entered summary judgment for the defendants, concluding that the doctor was not deliberately indifferent

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

to Holman's serious medical condition in violation of the Eighth Amendment and that, therefore, Wexford was not liable either. We affirm.

We recount the following facts and make all reasonable inferences from them in Holman's favor. See *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). At some point in the past, Dr. Andrew Tilden, the medical director at Pontiac Correctional Center, misdiagnosed Holman with gout. Then, in April 2014, Dr. Tilden evaluated Holman for complaints of stomach pain, vomiting, and trouble urinating; he admitted Holman to the infirmary for observation and ordered diagnostic tests. The tests revealed that Holman had developed diabetes and was suffering serious complications, so Dr. Tilden ordered intravenous fluids, insulin, and blood sugar monitoring. The next day, at Dr. Tilden's direction, Holman was transferred to the University of Illinois at Chicago Hospital. There, medical staff diagnosed rhabdomyolysis (kidney failure), which they attributed to an allergic reaction to a cholesterol medication. Dr. Tilden had prescribed this medication, and Holman had been taking it for years without incident.

Three months later, Holman was admitted to the prison's infirmary with a fever, chills, and vomiting. Dr. Tilden ordered intravenous fluids, insulin, blood sugar monitoring, and diagnostic tests. Holman did not improve, so he was transferred by ambulance to St. Joseph Medical Center that same day. He was admitted with sepsis due to a urinary tract infection, acute respiratory failure, acute kidney failure, and a draining colovesicular fistula (an open connection between the colon and bladder). Later, Holman was released with a recommendation that he be sent to UIC to repair the fistula; Dr. Tilden approved that procedure.

Initially proceeding pro se, Holman sued under 42 U.S.C. § 1983, alleging that Dr. Tilden had provided him with constitutionally deficient care. He asserted that Wexford was also liable because of its "widespread practice" of denying inmates access to proper or sufficient medical attention. See *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). The district court sua sponte recruited counsel to represent Holman.

In February 2017, the district judge set a discovery deadline of May 15, 2018. In December 2017 Holman's counsel asked to depose Dr. Tilden, but Dr. Tilden had suffered appendicitis that required surgery. Originally, it was anticipated that Dr. Tilden would become available in March, so Holman's counsel served a notice of deposition for that month. Dr. Tilden, however, had suffered complications from his surgery, and, as a result, was unavailable to be deposed between December 2017 and

May 2018. During this time, the defendants' attorneys kept Holman's counsel apprised of Dr. Tilden's unavailability. At one point, they lost track of Dr. Tilden when he went to visit family in Poland, but upon his return, they contacted Holman's counsel multiple times with dates when he could sit for a deposition. Holman's counsel did not respond. The defendants also moved to extend the discovery period; the district court granted the motion and reset the discovery deadline to July 9, 2018. Days before the deadline, Holman's counsel moved for sanctions on the basis that Dr. Tilden had unreasonably dodged his deposition.

After the close of discovery, defendants moved for summary judgment, relying primarily on an affidavit by Dr. Tilden. In response, Holman argued that the defendants could not prevail because they had not deposed any of Holman's disclosed witnesses and therefore could not establish that he lacked evidence for his claims. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986). Holman also argued that he could not answer the motion because he needed to take more discovery. See FED. R. CIV. P. 56(d). Holman did not address the defendants' substantive arguments, respond to their proposed statement of undisputed material facts, or submit his own affidavit or other evidence.

Taking up the parties' motions, the district court first denied Holman's motion for discovery sanctions. It concluded that Dr. Tilden's temporary unavailability for a deposition was unavoidable because of his serious illness. Moreover, the court determined, Holman could not show he was prejudiced by the unavailability because the defendants made several attempts to schedule Dr. Tilden's deposition once he became available, and Holman ignored them.

In addressing the motion for summary judgment, the district court concluded that because Holman did not respond to defendants' statement of facts, he had admitted them. See C.D. ILL. LOCAL R. 7/1 (D)(2)(b)(6). The court then determined that Dr. Tilden was not deliberately indifferent to Holman's medical needs, and that, without an underlying constitutional violation, Wexford could have no liability.

On appeal, Holman first argues that the district court erroneously denied his motion for sanctions because Dr. Tilden was unavailable for a deposition during the discovery period without a valid reason. But the "trial court has broad discretion concerning the imposition of discovery sanctions." *Park v. City of Chicago*, 297 F.3d 606, 614 (7th Cir. 2002). And the district court did not abuse that discretion in concluding that Dr. Tilden's unavailability was not in bad faith and that Holman could not show

prejudice. Dr. Tilden was unavailable for only five months out of the 17-month discovery period, and because of serious illness. Holman's counsel, Jared Kosoglad, knew about Dr. Tilden's unavailability, and, once Dr. Tilden became available, the defendants tried to reschedule. But Mr. Kosoglad failed to respond, never filed a motion to compel, and did not request an extension of the discovery deadline.

Relatedly, Holman argues that the district court should have stayed summary judgment until Dr. Tilden could be deposed because, without that deposition, he could not respond to the defendants' motion. But the district court did not err in deciding the summary judgment motion. True, the court did not specifically address Holman's request to reopen discovery, which was supported by a declaration of Mr. Kosoglad that he could not respond without taking evidence. See FED. R. CIV. P. 56(d). But where a party fails to secure discovery because of its own lack of diligence, "the district court can in its discretion hold the party to the consequences of its choice and decide the summary judgment motion." See *Helping Hands Caregivers, Ltd. v. Darden Rests., Inc.*, 900 F.3d 884, 891 (7th Cir. 2018). As the court noted in its sanctions and summary judgment orders, the failure to take depositions during the discovery period resulted from Mr. Kosoglad's lack of diligence in marshaling evidence to support Holman's claim. That is not a basis for overturning the district court's ruling on a properly filed motion.

Holman also reprises the argument that the district court should have denied the motion for summary judgment because the defendants failed to depose his witnesses. He relies on the concurring and dissenting opinions in *Celotex* to argue that this failure prevented the defendants from showing the absence of a material factual dispute. See *Celotex*, 477 U.S. at 328–39. But the defendants did not file a *Celotex*-type motion premised on the absence of evidence for a necessary fact. They argued that, based on the medical records and Dr. Tilden's affidavit, no reasonable jury could find that Dr. Tilden exhibited deliberate indifference to Holman's serious medical needs.

Next, Holman contends, as he did in the district court, that Dr. Tilden's affidavit was inadmissible because parts of it lack foundation or offer impermissible opinion testimony. But a general physician may be "competent to testify about problems that a medical specialist typically treats," see *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010), and Holman does nothing to establish that Dr. Tilden, who demonstrated familiarity in monitoring and treating rhabdomyolysis, lacked competence to testify as to its potential causes. In any case, Holman's qualms relate only to Dr. Tilden's

disagreement with the UIC staff that his rhabdomyolysis was a side effect of his cholesterol medication. The cause of the rhabdomyolysis—whether induced by medication or something else—is not material because there is no evidence that a misapprehension about the cause of condition delayed appropriate treatment.

Holman did not argue the merits of his deliberate indifference claim in the district court and therefore waives that argument on appeal. See *United Central Bank v. Davenport Estate, LLC*, 815 F.3d 315, 318 (7th Cir. 2016). Because he might have anticipated a ruling on his Rule 56(d) motion before being required to respond substantively, however, we note that summary judgment was properly entered. Holman needed to point to evidence from which a reasonable juror could find that Dr. Tilden knew of and disregarded a substantial risk of harm to Holman in making treatment decisions. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Even if we accept Holman's premise that his cholesterol medication caused his kidney failure, the record contains no evidence that Dr. Tilden knew, or should have known, when he prescribed it that Holman would have a severe reaction, especially when Holman had been taking it for years without issue. Holman also maintains that Dr. Tilden misdiagnosed him in the past, but he does not connect this supposed misdiagnosis to his medical problems in April and June 2014. What we are left with is evidence of Dr. Tilden's response to Holman's serious symptoms with tests, treatment, and immediate escalation to outside hospitalization when he could not stabilize Holman's condition. Without evidence that these actions totally diverged from accepted medical standards, judgment for Dr. Tilden was proper. See *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016).

Holman concludes by arguing, without elaboration, that the district court should not have entered judgment for Wexford on his *Monell* claim. But that claim required proof that he suffered a constitutional violation caused by an express or de facto policy of Wexford's that Dr. Tilden implemented. Because Holman could not prove any underlying constitutional violation, Wexford cannot be liable. See *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014).

AFFIRMED