In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 07-2656

LYNN FAAS,

*Plaintiff-Appellant,*

*v.*

SEARS, ROEBUCK & CO.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5299—**William J. Hibbler**, *Judge.*

———————

ARGUED MAY 9, 2008—DECIDED JULY 10, 2008

———————

Before FLAUM, KANNE, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Lynn Faas worked as a store general manager for Sears, Roebuck & Co. ("Sears") until she was fired in September 2004. One year later, Faas filed suit against Sears, claiming that Sears wrongfully terminated her employment in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Following discovery, the district court granted summary judgment to Sears, which claimed that it had not dismissed Faas because of her age, but as a result of her poor performance. After conducting our own review of the record, we agree and affirm.

## I. HISTORY

The following facts are recounted in the light most favorable to Faas, the non-moving party. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489 n.1 (7th Cir. 2007). Lynn Faas, age 53, began her career with Sears as a part-time sales associate in 1974. For nearly twenty years, Faas worked her way up the company ladder, and she became the store general manager of Sears's Sheboygan, Wisconsin store in 1993. Faas received subsequent promotions to larger stores until finally settling in as the store manager of Sears's Fox Valley Mall store in Aurora, Illinois, in April 2000.

As store general manager, Faas held the top management position in the Fox Valley store. This meant that Faas was ultimately accountable for everything that happened within the store, including customer service, income generation, sales development, and special events. Eight assistant store managers headed the store's various departments and worked under Faas. Faas reported to the district general manager of the Chicago South District, who managed the fourteen Sears stores in the district. Each district general manager was supervised by a regional vice-president.

In late 2002, Sears developed a new method of evaluating the performance of its stores (and its store general managers). Part of this initiative included tabulating a "balanced scorecard" that analyzed each store's performance in four categories: customer satisfaction, personnel data, sales, and profits. Sears utilized a 5.0 point scale to rate each category—a score of 1.0 was considered the worst possible score, a 5.0 was a perfect score, and a 3.0 indicated "acceptable" performance. The balanced scorecard then averaged the scores for each of the four

categories, which yielded a store's overall balanced-scorecard rating. Sears's corporate office issued balanced scorecards for each Sears store every month, and tracked the cumulative monthly scores for each store. The store managers were responsible for leading and coaching their teams to meet Sears's customer service and performance expectations, and were held accountable for their stores' balanced-scorecard scores.

When a district general manager felt that a store general manager was underperforming, the district manager could attempt to rehabilitate the store manager through a procedure called a "Performance Plan for Improvement." Sears outlined the Performance Plan for Improvement process in a policy guide issued to all Sears managers: a manager identifies the associate's performance deficiencies; the manager then discusses the performance shortfalls with the associate, and together they outline a plan for correcting the performance problems; finally, the manager follows up to ensure adherence to the corrective plan. Sears's policy guide explained that "[t]he manager . . . should use discretion to determine the exact timing for each follow-up step, considering the severity of the issue at hand and the opportunity to observe changes in performance; however, the manager must treat similar performance situations among associates in a consistent manner."

In November 2002, Robert Poss, Faas's district general manager, placed Faas on a Performance Plan for Improvement because of her inconsistent execution, lack of organization, and inability to train and to provide leadership to her sales associates and assistant store managers. Poss commented in a memo explaining his decision to place Faas on a Performance Plan, "[i]t appears to me at this

point [that] Lynn is not capable of running this size store." Poss also noted that Faas's store lagged behind the other stores in the Chicago South District, and that her deficiencies as a manager resulted in unacceptably low customer-satisfaction scores for the Fox Valley store. Faas provided Poss with a corrective plan that acknowledged that she needed to better coach her employees.

Faas remained on the Performance Plan for Improvement until July 2003. Between November 2002 and July 2003, Poss followed up with Faas several times. On each occasion, Poss acknowledged that Faas had made some progress, but he also noted that Faas had not rectified many of her performance problems. Poss explained that the Fox Valley store's customer-satisfaction scores were still below the company average and those of the other stores in the district. Poss also called into question Faas's leadership skills because of her failure to develop her assistant store managers. And Poss noted on several occasions that if Faas did not improve, further action would be necessary, "including termination of employment." Poss finally removed Faas from the Performance Plan in July 2003, but he told her that she still needed to improve her customer-satisfaction scores. Around the same time, Poss issued a mid-year review to Faas in which he rated her a two out of five for results, and a three out of five for leadership. Faas later explained that she viewed Poss as "an excellent leader" and "a fair manager," and she did not believe that his decision to place her on a Performance Plan was related to her age.

Poss retired in October 2003, and was replaced by Wendy Carges as district general manager for the Chicago South District. When Carges took over for Poss, the Chicago South District stores had balanced-scorecard ratings that

ranked among the worst of Sears's 63 districts nation-
wide. In order to improve the chronically underachieving
stores in the Chicago South District, Carges assessed the
individual performance of each of the twelve store gen-
eral managers in her district, and determined that all but
two of the store managers were underperforming. The
two store managers that Carges believed to be adequately
managing their stores, Ray Morris (age 59) and David
Allen (age 62), were both older than Faas. Among the ten
underperforming store managers, one had started with
Sears only six months before Carges's hire and had only
been at his store for one month, and four others did not
begin at their stores until after Carges became district
manager—one of these four store managers was also
new to Sears. Carges discussed the situation with her
regional vice-president, Steve Sunderland, who told her
to take her time evaluating the store general managers in
her district and gave her latitude to decide whether to
place store general managers on Performance Plans for
Improvement.

Faas was among the remaining five store general manag-
ers whom Carges considered to be underperforming.
Carges's initial impression of Faas was that she had
poorly managed the 2003 holiday season and that her
team was not cohesive. Carges observed, as Poss had,
that the balanced-scorecard numbers for the Fox Valley
store were unacceptably low and were particularly weak
in the customer-satisfaction category. The Fox Valley
store was particularly important to Carges's plan for
rejuvenating her district because it was the third largest
volume store in the Chicago South District, and was
scheduled to undergo remodeling beginning in Novem-
ber 2003.

After Carges spoke to Sunderland, she met with Faas twice in early 2004 and told Faas that she was considering placing her on a Performance Plan for Improvement. Carges did not immediately place Faas on a Performance Plan, and instead explained to Faas that she did not think that Faas had the requisite skill sets to run the large Fox Valley store, nor did she think that Faas was right for Sears's "current matrix." Carges encouraged Faas to consider "any and all options," such as a position in Sears's corporate offices or leaving Sears to run a specialty store. Faas told Carges that she liked her position as a store general manager and that she did not want to leave voluntarily.

In February 2004, Carges conducted a performance review of Faas and rated her a two out of five for both results and leadership. The review also contained a self-assessment section, in which Faas rated herself a two out of five for results and a three out of five for leadership. But Carges's performance review was not entirely critical: Carges complimented Faas for her handling of the remodeling of the Fox Valley store, and Carges noted that Faas seemed to understand what was required of her while other store general managers did not.

In March 2004, Carges received complaints from two of Faas's assistant store managers because Faas allegedly mistreated them and berated her team during a meeting. Carges discussed the complaint with Faas and again encouraged her to pursue other employment options because having a fragmented store would make it difficult for her to improve as store general manager. Faas again informed Carges that she wanted to retain her current position and that she believed she could remedy the situation. Soon after the incident, Carges was told by

Sunderland that the Fox Valley store needed a "new person" because something was wrong with the "culture" at the store.

In May 2004, Carges determined that Faas's performance had still not improved, and Carges placed Faas on a Performance Plan for Improvement. At that time, the Fox Valley store had a year-to-date balanced-scorecard rating of 1.9, and the store's customer-satisfaction component was 1.0. The Performance Plan explained that Faas failed to demonstrate an ability to successfully lead her team, that her store's balance-scorecard rating was unacceptable, and that its customer-satisfaction score was "substandard." Carges also noted that Faas neglected to coach or train her assistant store managers and that her inconsistent performance would "result in further action, which may include termination." In June 2004, Carges met with Faas and noted some progress but also stated that the leadership concerns still needed immediate improvement.

By July 2004, Faas's store had the lowest balanced-scorecard rating (1.6) in the entire Chicago South District, and the store's customer-satisfaction score remained a 1.0, which Carges later noted was "one of the poorest within the district, region, and nation." On August 13, 2004, Carges issued a memo to Faas informing her that her store's balanced-scorecard ratings were "completely unacceptable," and that she had 30 days to correct her performances issues or she would be terminated.

From September 4 through September 12, 2004, Faas took a vacation to celebrate her 50th birthday. Sears had scheduled two special events at the Fox Valley store for that week: a fall-apparel promotion and an autograph

signing by ex-Chicago Cubs catcher Michael Barrett.[1] Carges considered the events to be important marketing opportunities for the Fox Valley store. When Faas left for vacation, she placed her loss-prevention manager and three assistant store managers—who had been in their positions for just over one month—in charge of the promotional events.

On September 8, 2004, the day of the Barrett signing, Carges visited the Fox Valley store and disapproved of how the apparel area had been set up for the fall promotion. Carges also discovered that the assistant store managers planned to have customers line up for the Barrett signing through the parking lot instead of inside the store, where they would be able to view the merchandise while waiting. Carges noted that the assistant store managers seemed overwhelmed and frustrated, and she changed her plans and stayed at the Fox Valley store for the day to guide the assistant store managers through the promotional events. Faas was terminated on September 13, 2004. The termination letter stated, "Lynn continues to fail to lead her team to the level of execution and performance necessary . . . . Key events, critical to the success of the store that heavily impact our customers, are poorly executed, recently the fall apparel reset and a marketing/P.R. event."

Faas filed this age-discrimination lawsuit under the ADEA in September 2005. After the case proceeded

---

[1] Barrett was traded from the Cubs to the San Diego Padres in June 2007 after an infamous dugout brawl with his "battery-mate," pitching-ace Carlos Zambrano. The North Siders, perhaps motivated by the spat, went on to win the National League Central Division title in 2007.

through discovery, Sears filed a motion for summary judgment in November 2006, arguing that Faas could not prove a *prima facie* case of age discrimination through either direct or indirect evidence because the undisputed facts showed that Faas was fired for her consistently deficient performance. In response to Sears's summary-judgment motion, Faas argued that she could prove age discrimination through both direct and indirect evidence, and that an adverse inference should be drawn against Sears because of Sears's destruction of certain employee records.

Faas's direct-evidence and adverse-inference arguments in opposition to summary judgment stemmed from her discovery of "Leadership Overviews"—documents that Sears created as part of its "Sears Leadership Overview and Talent Management Process," which it implemented to ascertain what potential talent the company had within its ranks. Sears evaluated the confidential Leadership Overviews at annual planning meetings to determine who might be a good candidate for promotion in the future. The Leadership Overview forms contained biographical information such as age, education, and gender, and also provided an assessment of an employee's potential by placing the employee in one of five categories—"high potential," "promotable," "solid performer," "blocker," or "above capacity." The "blocker" category referred to someone whose performance was adequate, but whom management did not perceive to have the skills to move beyond their current assignment, and who might be limiting the development of other employees by remaining in their current position. Sears did not terminate employees it classified as "blockers"; however, the company had a policy of motivating "blockers" to

pursue other positions because they limited the development of more promising employees. Poss rated Faas a "blocker" in the "Overall Assessment of Potential" category on her 2003 Leadership Overview, which Sears produced to Faas during discovery.

Sears did not show the Leadership Overviews to its employees and did not keep the forms in the employees' personnel files. Sears retained the forms only until it completed the next cycle of overviews—typically six months to one year—at which point, Sears shredded the documents. During a deposition, Donna Deselits, Sears's Human Resources Director for stores in the North Central Region, explained that the Leadership Overviews listed confidential factors such as age and salary, and for this reason, among others, Sears destroyed the documents. Faas's summary-judgment response contended that the document destruction supported an inference that the documents contained information adverse to Sears's case. *See Park v. City of Chicago*, 297 F.3d 606, 615-16 (7th Cir. 2002). Faas also argued that Deselits's comment about the document shredding and Deselits's decision to shred the documents were direct evidence of age discrimination.

Faas's indirect-evidence argument in her response to Sears's motion for summary judgment claimed that she had presented circumstantial evidence of age discrimination because younger, similarly situated store general managers were not disciplined or terminated, while older, similarly situated store managers were disciplined and encouraged to retire. Faas pointed to the fact that the Fox Valley store was not the only struggling Sears store in the Chicago South District in 2004; in fact, every store had a score below the 3.0 benchmark. Faas claimed

that by selecting Faas and two older store managers—David Johnson (age 62) and John Spencer (age 59)—for Performance Plans for Improvement, Carges had failed to consistently apply Sears's disciplinary standards. As with Faas, Carges encouraged both Johnson and Spencer to pursue other employment options, and both men eventually elected to retire voluntarily.

Sears countered by explaining that Carges decided that she could not handle putting all of the store general managers on Performance Plans for Improvement simultaneously, so she elected to focus on the store managers with the lowest balanced-scorecard ratings—Faas's store had a 1.6, Johnson's store had a 1.8, and Spencer's store had a 1.9. Sears also explained that Carges did not place Scott Kraatz (age 50), whose store had the second-lowest rating (1.7) on a Performance Plan because Kraatz was one of the store managers who was new to Sears and new to his store, and also because Kraatz's store had started 2004 with a score that was "quite good" that slipped as the year went on. Carges eventually placed Kraatz on a Performance Plan in 2005.

The district court evaluated the parties' arguments, reviewed the summary-judgment record, and granted summary judgment to Sears. The district court first explained that Deselits's testimony about the Leadership Overviews was not direct evidence of age discrimination because Deselits's comment "simply [was] not related" to Carges's decision to terminate Faas, and because the term "blocker" was age-neutral. The district court next explained that it would not draw an adverse inference against Sears about the contents of the Leadership Overviews. Finally, the district court rejected Faas's attempt to show discrimination by circumstantial evidence, noting

that "Sears provided a legitimate, non-discriminatory reason for Carges's decision to place Faas, and not the other [store general managers], on a [Performance Plan for Improvement]," and that Faas did not present any evidence that the proffered reason was pretextual.

## II. ANALYSIS

Faas now reiterates two of the three arguments she made to the district court in opposition to summary judgment. First, Faas contends that she presented a *prima face* case of age discrimination under the indirect method of proof because she offered "strong evidence" that Sears treated similarly situated, younger store general managers more favorably than it treated Faas and other similarly situated, older store managers; Faas claims that her evidence raised a genuine issue of material fact with respect to whether Sears's justification for the disparate treatment of its store managers was pretextual. Second, Faas argues that the district court should have drawn an adverse inference against Sears based upon Sears's destruction of the Leadership Overviews.

We review the district court's grant of summary judgment to Sears *de novo*, examining the record in the light most favorable to Faas. *See Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To raise a genuine issue of material fact, Faas must do more than "simply show that there is some metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). " 'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.' " *Springer*, 518 F.3d at 483 (quoting *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007), and *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005)).

### A. *Faas's* prima facie *case of age discrimination*

The ADEA makes it unlawful for an employer to discharge an individual because of her age. 29 U.S.C. § 623(a)(1). To establish her claim under the ADEA, Faas must show that her age " 'actually motivated' " Sears's decision to terminate her employment. *Hemsworth*, 476 F.3d at 490 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000), *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993), and *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003)). In other words, Faas must show that her age " 'actually played a role in [Sears's decision-making] process and had a determinative influence on the outcome.' " *Id.* (quoting *Reeves*, 530 U.S. at 141, *Hazen*, 507 U.S. at 610, and *Schuster*, 327 F.3d at 573).

Faas may establish her ADEA claim through either the direct or indirect methods of proof. *Hemsworth*, 476 F.3d at 490; *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). We have noted that because a plaintiff may utilize circumstantial evidence under both methods of proof, "[t]he distinction between the two avenues of proof is 'vague,' and the terms 'direct' and 'indirect' themselves are somewhat misleading in the present context." *Luks v.*

*Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006) (quoting *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 903 (7th Cir. 2006)) (internal citation omitted). The direct method of proof involves direct evidence, such as near-admissions by the employer, as well as more attenuated circumstantial evidence that " 'suggests discrimination albeit through a longer chain of inferences.' " *Hemsworth*, 476 F.3d at 490 (quoting *Luks*, 467 F.3d at 1052). In contrast, the indirect method of proof involves a certain subset of circumstantial evidence that includes how the employer treats similarly situated employees, and " 'conforms to the prescription of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).' " *Id.* at 490-91 (quoting *Luks*, 467 F.3d at 1052).

On appeal, Faas has failed to raise, and has therefore waived, her direct-method-of-proof argument. *See Local 15, Int'l Bhd. of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 783 (7th Cir. 2007) (" 'A party waives any argument that . . . if raised in the district court, it fails to develop on appeal.' " (quoting *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002))). We therefore turn to whether Faas's claim under the indirect method of proof can withstand summary judgment. We evaluate whether Faas has raised a genuine issue of material fact under the indirect method using the familiar burden-shifting approach outlined by *McDonnell-Douglas*. *See Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007).

In order to establish a *prima facie* case of age discrimination under the indirect method, Faas must to prove that (1) she is a member of a protected class; (2) her performance met Sears's legitimate expectations; (3) despite her performance, she was subject to an adverse employment action; and (4) Sears treated similarly situated em-

ployees outside of her protected class more favorably. *See id*.; *Ptasznik*, 464 F.3d at 696. Assuming that Faas can successfully lay out a *prima facie* case, the burden then shifts to Sears to provide a legitimate, non-discriminatory reason for its decision to terminate her employment. *See Barricks*, 481 F.3d at 559; *Ptasznik*, 464 F.3d at 696. Once Sears meets this minimal threshold, Faas may attack Sears's proffered reason as mere pretext for discrimination. *See Barricks*, 481 F.3d at 559; *Ptasznik*, 464 F.3d at 696.

Where a plaintiff claims, as Faas does, that an employer's legitimate expectations were disparately applied, the second and fourth elements of the *prima facie* case are closely intertwined with the pretext analysis, and the two inquiries may be merged and considered together. *See, e.g., Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064 n.8 (7th Cir. 2003); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002); *Curry v. Menard*, 270 F.3d 473, 478 (7th Cir. 2001); *see also Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006) ("[I]f the plaintiffs argue that they have performed satisfactorily and the employer is lying about the business expectations required for the position, the second prong and the pretext question seemingly merge because the issue is the same—whether the employer is lying."). We will therefore analyze whether Faas presented sufficient evidence of pretext because without such evidence, Faas cannot show that she was meeting Sears's legitimate expectations. *See Hague*, 436 F.3d at 823.

"Pretext 'means a dishonest explanation, a lie rather than an oddity or an error.'" *Id*. (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000)); *see also Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) ("Pretext is more than a mistake on the part of the employer; it is a phony excuse."). "Showing pretext

requires '[p]roof that the defendant's explanation is unworthy of credence.' " *Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1063 (7th Cir. 2008) (quoting *Reeves*, 530 U.S. at 147).

Sears explained that it terminated Faas because of her consistently poor performance and for poorly executing two key marketing events. Faas does not dispute that she had a track record of sub-par leadership and customer service in the larger stores. And Faas's managerial insufficiencies are well documented—the Performance Plans for Improvement, the deposition testimony of Carges, and even Faas's own admissions indicate that Faas was a less-than-exemplary store general manager. Yet Faas insists that Sears is lying when it claims that she was terminated for her poor performance and for botching the promotional events because Sears disparately applied its performance expectations—younger store managers with similar performance problems were given a chance to improve, while older store managers were disciplined and terminated.

Faas's disparate treatment argument is untenable because she has not come forward with evidence that the store general managers who escaped reprimand shared a " 'comparable set of failings' " with her. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) (quoting *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 530 (7th Cir. 2003). Faas had a long history of poor customer service (characterized at one point as "substandard") and of an inability to motivate her team (epitomized by the dissension among her assistant store managers after Faas allegedly chastised her team at a meeting in March 2004). Faas's extensive record of poor management without improvement dated back to Poss's tenure as district general man-

ager, and Faas concedes that Poss, who harbored the same concerns about Faas's management that Carges later observed, was unbiased. Faas also mismanaged two major marketing initiatives. Perhaps most importantly, Faas had the lowest balanced-scorecard rating in her district. This idiosyncratic "set of failings" distinguishes Faas from the other managers supervised by Carges, and we cannot say that any of the other store general managers were similarly situated to Faas. *See Burks,* 464 F.3d at 751; *Haywood*, 323 F.3d at 530.

Even if we thought that the other store general managers were similarly situated to Faas, other facts in the record belie Faas's conclusion that Carges disparately applied Sears's disciplinary procedures in a discriminatory manner. When Carges initially evaluated the twelve store general managers in the Chicago South District, she believed that two—Morris and Allen—were adequately performing their jobs. Significantly, both Morris and Allen were several years *older* than Faas. Indeed, Morris and Allen were two of the four oldest store managers in the district. A pattern where the protected-class members "sometimes do better" and "sometimes do worse" than their comparators is not evidence of age discrimination. *Cf. Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir. 1993) ("Such a pattern, in which blacks sometimes do better than whites and sometimes do worse, being random with respect to race, is not evidence of racial discrimination.").

Of the ten underperforming store general managers, Carges chose to discipline three—Faas, Johnson, and Spencer—by placing them on Performance Plans for Improvement. Faas was the low manager on the balanced-scorecard totem pole, and Johnson and Spencer had the

third and fourth lowest balanced-scorecard ratings, respectively. The manager with the second-lowest rating, Kraatz, was not disciplined; but Kraatz had been at his store for less than a year when Carges became district general manager, and Kraatz had started the year with strong balanced-scorecard ratings before struggling. Carges eventually placed Kraatz on a Performance Plan after Faas was terminated. Moreover, Kraatz is less than four years younger than Faas—not a significant enough disparity in age to present a *prima face* case under the ADEA without further proof. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001) (five year age difference is not significant); *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 892 (7th Cir. 1997) (seven year age difference is not significant).

So Carges—faced with the daunting task of improving ten of her twelve store managers—prioritized three of the worst four. Carges selected whom to discipline using an objective metric, the balanced-scorecard ratings, and Faas makes no argument that Sears improperly used age in calculating those ratings. Moreover, Carges's decision to discipline her worst-performing manager, Faas, seems even more justified considering Faas's habitual failures, and considering that Carges believed the Fox Valley store to be key to her plan to revitalize the Chicago South District. And Carges's decision to wait to discipline Kraatz given his inexperience and strong start also appears quite legitimate. In light of the fact that Carges had only limited time to manage many stores, her decision to focus on the measurably least-competent managers (with one justifiable exception) does not strike us as pretext, it strikes us as wise.

Faas makes one additional argument that she claims established a genuine issue of material fact with respect

to pretext: Faas contends that Carges's refusal to place all of the underperforming store general managers within the Chicago South District on Performance Plans for Improvement contravened Sears's "policy" of treating performance problems in a consistent manner. *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005) ("This court has held in the past that an employer's failure to follow its own internal employment procedures can constitute evidence of pretext." (citing *Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424, 427 (7th Cir. 1992))). Faas claims that Sears had such a policy based on a statement in a Sears guide that outlined the Performance Plan for Improvement process for its managers: "the manager must treat similar performance situations among associates in a consistent manner."

However, Faas has taken this statement completely out of context. The language directly before the above quotation refers to a manager's discretion in determining how to follow up during the Performance Plan for Improvement process, "[t]he manager . . . should use discretion to determine the exact timing for each follow-up step, considering the severity of the issue at hand and the opportunity to observe changes in performance; however, the manager must treat similar performance situations among associates in a consistent manner." In our view, this language does not create a policy that Sears's managers must discipline all underperforming subordinates; rather, it limits the discretion of managers once they choose to initiate the disciplinary process (*i.e.*, the manager cannot be inconsistent in how she follows up with an employee). The fact that Carges was given discretion by Sunderland to select which store general managers to focus on supports this reading. Nevertheless, even if we

were to view the language as creating a policy of treating similar performance situations consistently, we have already explained how Faas's performance deviated from that of the other store general managers. Carges's actions did not clearly violate such a policy.

We cannot say that Carges or Sears is lying when they claim to have disciplined and discharged Faas for her inability to manage the Fox Valley store. *Hague*, 436 F.3d at 823; *Kulumani*, 224 F.3d at 685. The district court correctly held that Faas did not raise a genuine issue of material fact on her ADEA claim under the indirect method of proof.

B. *The district court's denial of an adverse inference for Sears's document destruction*

Finally, we turn to Faas's contention that she was entitled to an inference that Sears's Leadership Overviews contained discriminatory content. In order to draw an inference that the Leadership Overviews contained information adverse to Sears, we must find that Sears intentionally destroyed the documents in bad faith. *See Park*, 297 F.3d at 615; *see also Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001); *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258-59 (7th Cir. 1982). "Thus, '[t]he crucial element is not that evidence was destroyed but rather the reason for the destruction.' " *Park*, 297 F.3d at 615 (quoting *S.C. Johnson & Son, Inc.*, 695 F.2d at 258). A document is destroyed in bad faith if it is destroyed " 'for the purpose of hiding adverse information.' " *Rummery*, 250 F.3d at 558 (quoting *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)).

Faas has failed to advance any evidence that Sears destroyed the Leader Overviews in order to hide adverse information. Rather, she claims that we should assume as a matter of "common sense" that Sears shredded the forms evasively. To the contrary, the record shows that Sears shredded the Leadership Overviews as a regular business practice in order to protect confidential information about its employees. And Sears's legitimate motivation for shredding the documents is not transformed into a disingenuous one merely because Deselits uttered the word "age" (in addition to "salary") when discussing what kind of confidential information the Leadership Overviews contained.

The district court also properly denied Faas an adverse inference because the Leadership Overviews are not relevant to Faas's case. *See Crabtree v. Nat' l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001) (upholding district court's decision not to grant adverse inference where irrelevant documents were destroyed); *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985) (same). The record shows that Sears did not use the Leadership Overviews when deciding whether to discipline or terminate employees—the undisputed evidence in the record is that the Leadership Overviews were merely a talent assessment tool that allowed Sears to ascertain who among its employees had the potential for a promotion.

Even still, Sears preserved, and produced, Faas's personal Leadership Overviews. This disclosure is pertinent because Faas had access to at least one of the Leadership Overview forms, which should have revealed the "adverse information" that Sears sought to hide by destroying the Leadership Overviews. But Faas's Leadership Overview did not contain any discriminatory material. The

word "blocker," as Sears defined it, had nothing to do with age, but with an employee's potential for ascent within the company. The form listed Faas's age, but also included other biographical data. The fact that Faas had access to her own Leadership Overview and could not articulate what adverse information it contained is proof enough that Sears did not destroy the documents to hide adverse information. Faas "has offered no evidence, other than [her] own speculation, that they were destroyed to hide discriminatory information." *Rummery*, 250 F.3d at 558. The document destruction therefore does not raise any issue of material fact with respect to Faas's discrimination claim. *See id*. at 558-59.

### III. CONCLUSION

We AFFIRM the entry of summary judgment in favor of Sears.