NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 27, 2008
Decided August 18, 2009

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 08-2191 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| VICTOR R. GUINTO, *Plaintiff-Appellant*, | |
| *v.* | No. 06 C 4816 |
| EXELON GENERATION COMPANY, LLC, *Defendant-Appellee*. | Charles R. Norgle, Sr., *Judge*. |

**O R D E R**

Victor Guinto is a longtime employee at Exelon Generation and its affiliated entities (together, "Exelon"). Guinto twice applied for a Senior Reactor Operator ("SRO") position at Exelon's Braidwood Nuclear Power Station, but both times Exelon denied his admission into a certification class that was a prerequisite for the position. When Exelon rejected him the first time, the members of Exelon's selection committee stated that they were concerned that Guinto lacked the willingness and ability to criticize his fellow workers and that Guinto appeared ready to use the SRO position only as a stepping stone to higher-paying

jobs.  When Exelon denied Guinto's application a second time, they relied on findings from an independent assessment agency, which had determined that Guinto "ha[d] significant skill deficiencies" and was "unlikely to succeed in [his] role" as an SRO.  In Guinto's view Exelon refused to promote him because of his age, and he sued Exelon for age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*  The district court granted Exelon summary judgment on both claims, holding that Guinto failed to rebut Exelon's legitimate, nondiscriminatory proffered reasons for the denials and that Guinto could not establish a causal connection between his statutorily protected complaints and Exelon's denial of Guinto's second application for the SRO position.

We affirm.  Exelon offered nondiscriminatory reasons for denying Guinto's applications, and Guinto has failed to rebut these reasons.  Regarding the denial of his first application, Guinto has essentially admitted that Exelon's decision-makers acted for the legitimate reasons that they proffered.  As such, Exelon did not discriminate against Guinto because of his age.  Guinto also cannot establish a genuine issue of pretext in the second denial:  Exelon subjected all of its employees to the independent assessment center, and Guinto was the only one to receive a "red rating" that ostensibly barred promotion.  Given these and other uncontested facts, no rational jury could believe that Exelon lied in explaining why it did not promote Guinto the second time around.  Finally, although the district court erred by failing to consider whether Guinto's retaliation claim could reach the jury under the indirect method of proof, the error was harmless; Guinto has failed to rebut Exelon's nondiscriminatory proffer.

## I.  Background

Exelon owns and runs the Braidwood Nuclear Power Station.  Inside of Braidwood's nuclear control room, Reactor Operators ("ROs") operate the station's two nuclear reactors, and they are directly supervised by Senior Reactor Operators ("SROs"), which is a "level 3" position.  To become an SRO, a candidate must complete an 18-month class to become certified by the Nuclear Regulatory Commission and then complete an additional 6-month onsite training program.  During this two-year period, Exelon pays the candidate's salary even though the applicant is not serving as an SRO.  Accordingly, Exelon desires its SROs to serve for a substantial period of time; its written policy expects its employees to remain as SROs for four to seven years before being promoted to another position, although Exelon has promoted some employees in as early as three years.

In 2004 Exelon did not have enough SROs at Braidwood to satisfy its internal standards, and it budgeted for eight individuals to take a 2004 SRO-certification class.

Exelon created a selection board to screen and then interview the applicants. Around the same time, Exelon also offered employees the opportunity to become a Work Week Manager ("WWM"). The WWM position is designated as a "level 4" job, which is technically more senior than the SRO position and should command a higher salary. However, not all WWMs receive level-4 pay; to receive level-4 pay, a WWM must have served as a WWM for three years or previously served as a supervisor (which includes SROs).

Victor Guinto has been an employee at Exelon since 1981. For over 15 years, he served as an RO at Braidwood. In 2001 Exelon promoted him to Senior Training Specialist, a "level 3" job outside the control room. In 2004, when he was 55 years old, Guinto applied both to become a WWM and to enter the 2004 SRO class. Exelon's selection board interviewed Guinto for the WWM position and offered it to him at the level-3 pay rate. Guinto demanded to be paid at the level-4 rate, and when that tactic failed, he rejected Exelon's WWM offer and reiterated his desire to enter the 2004 SRO-certification class.

The selection board did not reinterview Guinto for the SRO position. Instead, Guinto met with one of the board's members, Cheryl Gayheart, who asked him a few supplemental questions. According to Guinto, Gayheart asked what were his career goals, and he responded, "To get to the next promotional levels. What are yours?" She then stated that "we don't want to put you in the control room if you're not going to be happy." Guinto answered, "I probably won't be happy if I see that you're not doing enough to properly staff the main control room," by which he meant that he wanted Exelon to continue increasing the number of SROs "[t]o allow [for] advancements."

Exelon did not select Guinto to enter the 2004 class. Explaining why,[1] Gayheart testified at her deposition that she told the selection committee that Guinto did not sufficiently challenge those he worked with, which is expected of an SRO. Gayheart also worried that Guinto only wanted "his ticket punched," meaning that Guinto desired the SRO position only because it allowed advancement to a level-4 paying job. Carl Dunn, another committee member, told the committee that based on his experiences with Guinto, Guinto had failed to "demonstrate any significant leadership skills or initiative in dealing with plant problems." Gary Dudek, another member, testified that at the board meeting he questioned whether Guinto wanted to stay as an SRO for a period of years or instead wanted the position just to leap to a higher-paying job. Karen Grieg, a committee member who had not met Guinto, testified that she had concluded that Guinto lacked the "desires and passion" to become an SRO. The committee as a whole therefore determined that

---

[1] The information in this paragraph is from Exelon's Local Rule 56.1 Statement of Uncontested Facts and Guinto's response thereto, both of which were filed in the district court. *See generally* LOCAL R. 56.1.

Guinto did not have the requisite "motivational fit" to enter the 2004 class. Most importantly for our purposes, Guinto does "not dispute" any of these facts.

The eight who initially entered the 2004 class were at least 11 years younger than Guinto. One of those eight later dropped out. Instead of selecting the next-highest-ranked candidate from its list, Exelon filled the vacated spot with a 31-year-old employee, Ronald Stopka. Stopka originally did not express interest in the class, and Exelon did not interview him for the position once he later expressed interest. Exelon explains that it placed Stopka in the 2004 class because Stopka was an RO in the control room, it had too many ROs and not enough SROs, and it cost Exelon nothing to place Stopka in the class because it already budgeted for his salary. In October 2004 Guinto complained through Exelon's internal review system that Exelon had discriminated against him based on his age. In March 2005 he filed an age-discrimination charge with the EEOC.

In September 2004 Exelon changed its corporate policies regarding promotions. Under the new policy, all employees "who are considered for permanent promotion to a supervisor position" must enter a "Supervisor Assessment Selection Process." That process required an independent agency to evaluate the applicant for leadership potential based on group exercises and problem-solving simulations. The independent agency must then assign the applicant a color rating. A "red rating" symbolizes that the employee "has significant skills deficiencies" and is "unlikely to succeed in [the applied-for] role." Applicants who are rated red "will not be hired or promoted. [Employees] rated red may be re-assessed after their developmental needs have been met." Finally, the policy notes that "[a]ll participants who have been through the assessment [process] must wait at least six months before being re-assessed."

In late 2005 Exelon accepted applications for a 2006 SRO-training class, and Guinto again expressed interest. Guinto and all other applicants entered the Supervisor Assessment Selection Process, but only Guinto received a "red rating" from the agency. Guinto admits that the assessment agency did not discriminate against him on the basis of his age. Nevertheless, he notes that Exelon did not provide him with any material to study or advise him about the expectations at the assessment center. Moreover, he claims that the policy on its face did not apply because he was not seeking to be "hired or promoted"; instead, he sought a lateral transfer from one level-3 position to another level-3 position. All of the 11 candidates who entered the 2006 class were younger than Guinto; one was seven years younger, and the rest were at least ten years younger.

Guinto brought this two-count suit alleging violations of the ADEA. In Count 1 Guinto claimed that Exelon unlawfully discriminated against him on the basis of his age by denying him admission into the 2004 class and then again discriminated on the basis of his age by denying him admission into the 2006 class. In Count 2 he claimed that Exelon

unlawfully retaliated against his protected conduct—complaining through Exelon's internal channels and filing a charge with the EEOC—by denying him a spot in the 2006 class.

Exelon moved for summary judgment on both counts, which the court granted. For Count 1 the court reasoned that although Guinto satisfied his prima facie showing under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), he could not create a genuine issue that Exelon's legitimate, nondiscriminatory proffers were pretextual. For Count 2 the district court examined Guinto's claim only under the direct method and held that Guinto could not establish a causal connection between his protected conduct and Exelon's rejection of his application for the 2006 certification class. Guinto timely appealed.

## II. Analysis

We review the district court's grants of summary judgment de novo, examining the record in the light most favorable to Guinto. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640 (7th Cir. 2008). Summary judgment is proper only if the record shows that there is no genuine issue of material fact and that Exelon is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). To raise a genuine issue of material fact, Guinto must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas*, 532 F.3d at 640-41 (internal quotation marks omitted).

### A. Age-Discrimination Claims

The ADEA prohibits an employer from discriminating against any person over 40 years of age because of the individual's age. 29 U.S.C. §§ 623(a), 631(a). To prevail on an ADEA claim, a plaintiff "must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350 (2009). At the summary-judgment stage, however, the plaintiff only needs to create a genuine issue as to whether the employer discriminated against him on the basis of his age. We have traditionally allowed an ADEA plaintiff two ways to avoid summary judgment: the so-

called direct and indirect methods of proof.[2]  In this case, Guinto has eschewed the direct method, so we consider it waived.  *See Faas*, 532 F.3d at 641.

Under the indirect method, an ADEA plaintiff must establish his prima facie case, which requires him to show (1) that he is over 40; (2) that he was meeting his employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees not in the protected class were treated more favorably.  *Olson v. N. FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004).  If the plaintiff succeeds, then the defendant may rebut the prima facie showing by proffering a legitimate, nondiscriminatory reason for the adverse employment action.  *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008).  If the defendant bears this burden of production, then the plaintiff must prove that the defendant's proffered reason is "'false and only a pretext for discrimination.'"  *Id.* (quoting *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1290 (7th Cir. 1997)).  "The main inquiry in determining pretext is whether the employer honestly acted on the stated reason rather than whether the reason for the [adverse employment action] was a correct business judgment."  *Id.* at 674 (internal quotation marks omitted). If the plaintiff fails to rebut the "noninvidious reason for the adverse action, [then the defendant] is entitled to summary judgment.  Otherwise there must be a trial."  *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *accord Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) ("If [the employer's proffered reason] is the true ground and not a pretext, the case is over.").

Both in the district court and in its brief in our court, Exelon did not contest Guinto's prima facie showings.  Before oral argument, Exelon filed a letter under Rule 28(j) of the *Federal Rules of Appellate Procedure* that appears to contend that Guinto had not established a prima facie case of discrimination, but this argument comes far too late for us to consider it.  *See United States v. Shorter*, 54 F.3d 1248, 1256 n.19 (7th Cir. 1995).  As such, we assume that Guinto satisfied his prima facie showing.  Exelon thus has the burden of proffering legitimate, nondiscriminatory reasons for its decisions to deny Guinto entry into the 2004 and 2006 classes.  Exelon has met this burden: It maintains that it initially denied Guinto the spot because of its concern that he did not want to stay as an SRO and because he lacked the leadership qualities necessary for the position; it denied his entry a second time because the independent assessment agency gave Guinto a red rating.

---

[2]  The Supreme Court has recently reminded lower courts that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), utilized in Title VII cases is appropriate in the ADEA context."  *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2349 n.2 (2009). Nevertheless, we have long applied the burden-shifting framework to ADEA cases.  *See, e.g.*, *La Montagne v. Am. Convenience Prods., Inc.*, 750 F.2d 1405, 1409 n.1 (7th Cir. 1984).  The parties assume that the indirect method is appropriate in this case, and we shall oblige this assumption.

This case thus turns on whether these explanations are mere pretext, masking the real reason for the adverse employment actions—Guinto's age. If Guinto can create a genuine issue that Exelon is lying, which is to say that it did not act for the reasons it proffered, then the case should go to a jury; if not, then Exelon properly has been awarded summary judgment. For the following reasons, we conclude that Guinto has not created a genuine issue suggesting that Exelon's proffered reasons are pretextual.

We begin with Exelon's denial of Guinto's application to the 2004 class. Guinto clearly viewed the SRO position as a stepping stone to higher-paying jobs at Exelon. Whether or not this is a factually accurate characterization, it is indisputably legitimate for Exelon to search for candidates who want to become SROs and who appear willing to put in a multiyear commitment to the position. If a candidate lacks the motivation to be an SRO—indeed, when the candidate specifically states that he would be unhappy remaining as an SRO for a period of years—then, all else equal, he is less worthy than those with a greater motivation. This is essentially the justification for the adverse employment action that each committee member gave at their depositions. Exelon offered these reasons in its Local Rule 56.1 Statement of Uncontested Facts in the district court. Responding to these statements, Guinto did "not dispute" that the committee members acted for the reasons they proffered. In its response brief before us, Exelon highlighted that Guinto has not contested the veracity of its reasons, and Guinto's reply brief again failed to dispute that Exelon's committee members acted based on these legitimate, nondiscriminatory reasons. Guinto's continued failure to rebut these reasons is fatal to his discrimination claim. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (failure to deny is deemed an admission); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1108 (7th Cir. 2004) (similar).

To be sure, Guinto makes a series of arguments that have colorable support in our caselaw. He contends, for example, that Exelon failed to follow its protocols when it decided not to interview him for the SRO position and when it inserted Stopka into the class without an interview, *see Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005) ("[A]n employer's failure to follow its own internal employment procedures can constitute evidence of pretext."); that Exelon faulted Guinto based on subjective criteria, *see Giacoletto v. Amax Zinc Co.*, 954 F.2d 424, 427-28 (7th Cir. 1992) ("[T]he jury may, under some circumstances, reasonably consider subjective reasons as pretexts for discrimination."); and that he was a qualified applicant, *see Bell v. E.P.A.*, 232 F.3d 546, 551-52 (7th Cir. 2000) (plaintiff's superior credentials might evidence pretext). In the ordinary case, each of these arguments might suggest that the defendant's proffer is pretextual, but all of our cases so holding rest on the assumption that the plaintiff is challenging the veracity of the employer's proffered reasons. Here, in contrast, Guinto explicitly does *not* challenge the decision-makers' stated reasons. Thus, it is immaterial whether Exelon failed to follow internal protocols or rejected him based on subjective criteria; as long as it did not reject him on account of its age, it did not violate the ADEA.

Because the decision-makers' stated reasons have gone unrebutted, Exelon was properly awarded summary judgment on Guinto's age-discrimination claim with respect to the denial of his application to the 2004 SRO class.

Guinto likewise fails to establish that Exelon lied about why it decided to deny him admission to the 2006 class. Guinto's main argument here is that Exelon's new policy did not require him to be placed before the assessment center. In particular, he reads the new policy to apply only to new hires or promotions, not to current employees who seek a lateral transfer from one level-3 position to another. We think this argument could mean one of two things: It might mean that Exelon did not really deny him a spot in the 2006 class because of the red rating, but rather it denied him a spot in the class for some unstated reason. Alternatively, it might also mean that Exelon has truthfully stated why it rejected his application, but that this explanation violated its own policies. As we have just explained, the second of these possibilities can be easily dispatched as a basis for establishing an ADEA violation; we have repeatedly held that the ADEA does not offer protection against adverse employment actions that are "unwise or even unfair," *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006), and a failure to follow its own policy, without more, falls within this line of cases.

The first possibility would be sufficient as a matter of law to reach the jury, assuming that it had factual support in the record. However, there is no evidence in the record that calls into question Exelon's proffered rationale for the rejection of Guinto's second application. It is undisputed that everyone considered for the 2006 class underwent independent evaluation by the assessment agency. The record does not illuminate whether any other candidate was similarly situated in a level-3 position and forced to undergo independent assessment, but Guinto certainly has not pointed to any other employee who was treated differently. Thus, to the extent that Exelon misread its own policies, the record suggests that it failed to follow its own internal procedures with *all* employees. No rational jury could believe that this consistent "misapplication" of policy (if that's what it was) evidences pretext. *Cf. Ellis v. United Parcel Serv.*, 523 F.3d 823, 829-30 (7th Cir. 2008) (employer's possibly erroneous interpretation of policy does not evidence pretext when consistently applied).

The only question of importance is whether Exelon actually denied him the spot based on his red rating. *See Forrester*, 453 F.3d at 417. It is undisputed that Guinto was the only one to fail the test, and this is understandably a compelling reason to reject his application. Further, Exelon has consistently maintained that it rejected his application for this reason, and we see nothing in the record that suggests otherwise. Guinto believes that Exelon was partially at fault for not allowing him to prepare for the assessment, but he does not point to anything in the record to suggest that any other employee was allowed to prepare for the exam. Thus, nothing about this alleged lack of preparation suggests

pretext, even if Exelon arguably should have done more to support its employees. Finally, Guinto contends that Exelon should have provisionally admitted him into the 2006 class and allowed him to retake the test six months later. He in essence asks us to hold that Exelon must make a substantial investment as well as a large leap of faith about Guinto's abilities to improve, but the ADEA requires neither. We hold that the district court correctly concluded that Guinto has failed to create a genuine issue as to whether Exelon's proffered reason for denying him a spot in the 2006 class was pretextual.

## B. Retaliation Claim

Guinto also argues that Exelon retaliated against him in violation of the ADEA when it denied him the spot into the 2006 class. The ADEA prohibits employers from retaliating against an employee for conduct protected under the ADEA. 29 U.S.C. § 623(d). As with ADEA claims, ADEA-related retaliation claims may be proven under the direct and indirect method of proof. *See Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007). The district court considered whether Guinto could establish his retaliation claim under the direct method only.[3] This was error, as the parties had also presented arguments under the indirect method, which we have applied to ADEA retaliation claims. *See, e.g.*, *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678-79 (7th Cir. 2005).

Nevertheless, the error was harmless. To prevail under the indirect method, Guinto must create a genuine issue as to whether Exelon's nondiscriminatory proffer is pretextual. He fails for the same reason we just mentioned: Guinto cannot show that Exelon denied him entry into the 2006 class for any reason other than the fact that he received a red rating from the independent assessment agency. As such, the district court's grant of summary judgment to Exelon on the retaliation claim was proper.

**AFFIRMED**

---

[3] We note that Guinto has not challenged the district court's analysis under the direct method. We therefore consider this argument waived and look only to the indirect method.