NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 8, 2012
Decided August 22, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-3290

| | |
|---|---|
| VISHAKHA BANTHIA,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>ROCHE DIAGNOSTICS OPERATIONS,<br>INC.,<br>    *Defendant-Appellee*. | Appeal from the United States District<br>Court for the Southern District of Indiana,<br>Indianapolis Division.<br><br>No. 1:09-cv-00963-SEB-DML<br><br>Sarah Evans Barker,<br>    *Judge*. |

**O R D E R**

Vishakha Banthia claims that Roche Diagnostics Operations demoted her because she is from India and over 40 years old. The district court granted Roche's motion for summary judgment. On appeal, Banthia argues that she presented sufficient evidence to create a material dispute of fact about her claims. Because Banthia has not provided evidence showing that she was discriminated against on account of her national origin or age, we affirm the district court's judgment.

The following events are recounted in the light most favorable to Banthia. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 635 (7th Cir. 2008). Banthia was born in 1953 in India and earned her B.S. in chemistry there in 1974. Banthia later moved to the United States, and in

1989 Roche hired Banthia to work as a lab technician in the Quality Care division of its Diabetes Care lab in Indianapolis. She was promoted two years later to a scientist position, and as a scientist she operated equipment to evaluate the chemical properties of materials used to make strips for measuring blood-glucose levels.

In 2005, in response to a warning letter from the FDA noting problems in other Roche labs, the director and manager of the Diabetes Care lab began to discuss reorganizing the lab to improve its performance. Roche decided that scientists would now be required to understand the science underlying the tests used and be able to identify problems with testing methods and formulate solutions. Roche accordingly demoted some of its current employees from scientists to lab technicians and hired better-qualified employees to fill open scientist positions.

Banthia was one of the scientists who was demoted to a lab technician position, which reduced her responsibilities and her salary. Lab management explains that it decided to demote her in 2006 because she lacked expertise in running analytical equipment, and she had not demonstrated an ability to help improve lab procedures, create spreadsheets, or write technical protocols. Banthia's 2006 evaluation said that although Banthia met expectations overall, she fell short in two categories because she twice failed to follow procedure during an internal audit, and she needed to improve her technical skills and learn to resolve testing issues independently. The evaluation also noted that she needed to devote more attention to improving the lab's operating procedures. Her earlier evaluations from 2001 to 2005 were more positive, but they also showed deficiencies in computer skills and lab procedures.

The record contains statistics on the characteristics of the other ten scientists who worked at the lab and were affected by the reorganization. Of the three other scientists demoted, two were over 50 years old and non-American-born and one was over 40 years old and American-born. Of the seven employees who were not demoted, all but one were American-born and six were over 40 years old (four were over 50). Roche began hiring people for open scientist positions, and of six new hires, each was American-born and in his or her twenties.

Banthia sued Roche under the Age Discrimination in Employment Act, *see* 29 U.S.C. § 623(a)(2), and Title VII, *see* 42 U.S.C. § 2000e-2(a)(2), alleging that she was demoted because of her national origin and age. In granting Roche's motion for summary judgment, the district court determined that Banthia could not establish a prima facie case under the indirect method because, even if she had received positive evaluations in the past, she hadn't presented any evidence showing she could meet Roche's legitimate, increased expectations for the scientist position. The court observed that some of Banthia's evaluations were negative and that she did not meet expectations in two respects in her 2006 evaluation. And even if she had made a prima facie case of discrimination, the court continued, Banthia had not presented evidence

that Roche's heightened standards after the FDA warning letter were pretextual. The court ended by concluding that Banthia could not show discrimination under the direct method, either, because she hadn't presented any direct or circumstantial evidence that Roche demoted her because of discriminatory animus.

On appeal, Banthia first argues that she produced sufficient evidence that she met Roche's legitimate expectations. She relies on her performance evaluations from 1990 to 2005, which she says show that she consistently "met or exceeded Roche's legitimate job expectations." She criticizes the district court for relying heavily on her 2006 evaluation, reasoning that the evaluation was filled out after the decision to demote her had been made and the negative comments were insignificant.

Banthia's performance reviews do not show that she was meeting Roche's legitimate expectations. What matters here is whether Banthia was meeting Roche's expectations at the time of her demotion. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 901 (7th Cir. 2005). Accordingly, her earlier performance reviews cannot by themselves show that she was meeting expectations when she was demoted, particularly because the responsibilities of the position had substantially changed in the intervening period. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 753 (7th Cir. 2006); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002). Moreover, Banthia's evaluations from 2001 to 2005 were not uniformly positive and foreshadowed some of the reasons cited for her demotion, like failing to improve lab operating procedures and deficient computer skills. Though Banthia's 2006 evaluation was filled out after Roche decided to demote her, the evaluation covers her performance for *all* of 2006, including when Roche decided to demote her. Thus, the 2006 evaluation is arguably the most helpful because it reflected her ability to meet expectations *at the time* of Roche's decision. *See Burks*, 464 F.3d at 753.

Banthia responds that the 2006 evaluation was manufactured to bolster the already-made decision to demote her. But she doesn't present any evidence of dishonesty. Moreover, as already noted, several of her earlier reviews corroborate the 2006 evaluation. And though the 2006 evaluation noted that Banthia had become better at complying with lab rules by the end of the year, she cannot show that Roche did not genuinely conclude that she had not met expectations in two categories. Because meeting an employer's legitimate employment expectations is a necessary element of a prima facie case, *Greene v. Potter*, 557 F.3d 765, 768 (7th Cir. 2009); *Faas*, 532 F.3d at 641, this court may affirm the district court's decision under the indirect method of proof.

Banthia also challenges the district court's conclusion that, even if she had been able to make out a prima facie case of discrimination, she could not show pretext. She argues that

Roche's proffered reason for her demotion—improving the lab in the wake of the FDA warning letter of 2004—was pretextual because the FDA focused Roche on problems in other Roche labs, and Roche did not reorganize the Diabetes Care lab until three years later. She also contends that the job responsibilities did not actually change, which she says shows that Roche lied about increasing its expectations.

But to succeed, Banthia must produce evidence that tends to show that Roche's proffered explanation for her demotion wasn't just bad judgment, but was a lie, *Silverman v. Bd. of Educ.*, 637 F.3d 729, 744 (7th Cir. 2011); *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008), and she has failed to do so. Even if the warning letter first focused Roche on other labs, the only evidence in the record shows that it still caused Roche to reorganize the Diagnostic Care lab later on in response to the letter, after it had taken care of the more pressing problems in other labs. Moreover, Banthia's assertion that scientists do exactly what she did before being demoted is not borne out by the record. Roche has presented evidence showing that it expects scientists to do more now than scientists did under the old system; then scientists were required to do little more than follow the procedures developed by others but now scientists must understand the science underlying the tests and work to improve them.

Last, Banthia briefly argues that she presented sufficient evidence to survive summary judgment under the direct method of proving discrimination. She cites circumstantial evidence, specifically an email sent by the lab manager to a human resources manager telling her who would be demoted, and briefly saying, "You will notice that the three individuals for which a demotion is possible are minority employees." She also points to the demographics of the three other demoted Roche scientists.

But the email evinces no discriminatory motive: nothing in it suggests that the national origin of employees was the reason for the demotions, and the email could just as easily be read to show that the lab manager wanted to ensure that the demotion decisions were fair. *See, e.g., Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008); *Venturelli v. ARC Cmty. Servs.*, 350 F.3d 592, 601 (7th Cir. 2003). And on their own, the sparse statistics of demoted employees, non-demoted employees, and new hires fail to show discrimination against non-American-born employees over 40 because standing alone, "statistics cannot establish a case of individual disparate treatment." *Plair v. E.J. Brach & Sons*, 105 F.3d 343, 349 (7th Cir. 1997) (quoting *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1253 n.8 (7th Cir. 1990)). This is especially so since of those employees not demoted, all were over 40 and more than half were like Banthia over 50, and one of the three employees demoted was, unlike Banthia, under 50 and American-born. *See Faas*, 532 F.3d at 643 (a pattern in which class members sometimes do better and sometimes worse than comparators does not show discrimination).

AFFIRMED.